Filed 12/29/21  In re S.S. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re S.S., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>      Plaintiff and Respondent,<br><br>            v.<br><br>M.S,<br><br>      Defendant and Appellant. | G060507<br><br>(Super. Ct. No. 20DP0904)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Mary Kreber Varipapa, Judge.  Affirmed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, and Karen L. Christensen and Jeannie Su, Deputy County Counsel, for Plaintiff and Respondent.

Defendant M.S. (mother) appeals from the juvenile court's order removing her child, S.S., from her custody. Mother points to her acknowledged sobriety, stability, and compliance with the court's order and case plan. However, substantial evidence supports the court's finding that S.S. was at substantial risk of harm in mother's custody because of her relationship with C.S. (father), who has unresolved substance abuse issues. Further, the court did not abuse its discretion in approving the Social Services Agency's (the agency) case plan, despite mother's progress. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

S.S. was born to mother in July 2020. Mother and S.S. both tested positive for amphetamines while in the hospital, and mother admitted using methamphetamine. Mother lived with father, in an environment mother admitted involved "excessive substance abuse." Mother had a previous child with another man, C.S., to whom she was still married. C.S. has sole custody of that child as a result of a prior dependency case in Riverside County, which arose from mother's methamphetamine abuse.

The agency sought and received a protective custody warrant within days of S.S.'s birth. S.S. was placed with his maternal aunt. In the months that followed, the agency interviewed mother and father. Mother stated she wanted to share custody of S.S. with father, whom she called her fiancé. Mother indicated she had gotten sober and would stay sober and abide by the court's orders.

Mother consistently tested negative, visited S.S. regularly, and participated in therapy and, for a time, a Narcotics Anonymous program. However, father's presence at the visits with S.S. often interfered with the visits, as mother and father frequently argued, and the caregiver believed father sometimes attended visits while under the influence. Father also failed to participate in drug testing.

In May of 2021, mother was permitted to engage in unsupervised visits with S.S., outside the presence of father. At around the same time, mother began inquiring about filing a restraining order against father, and indicated to the social

workers assigned to the case that she no longer had contact with him. The caregiver, however, reported that she believed mother was allowing unauthorized contact between father and S.S. during the unsupervised visits, citing the fact that father's van was parked near mother's home. Mother reported that father did not reside with her, and had lost the keys to his van, which his relatives would be moving soon.

After another unsupervised visit, the caregiver reported she saw father in front of mother's residence, and that father recognized her and tried to hide. The caregiver also alleged father's van was still present. When the social workers made an unannounced visit to mother's home to investigate, the home was empty. The social workers called mother and asked about the caregiver's allegations. Mother told the social workers she did not know father was there, and that the allegations were untrue and motivated by the caregiver's desire to interfere with her reunification with S.S. The social workers also asked for contact information for mother's roommates to verify her statements, but mother declined, stating she wanted their privacy respected. Mother further told the social workers she did not want father in S.S.'s life and did not want to share custody until she saw a change in his behavior.

At the June 25, 2021 dispositional hearing, one of the social workers testified an emergency protective order had been obtained by father against mother, arising from an incident on May 25, 2021. The order indicated that mother and father were at father's residence, and mother slapped father three to four times. It also indicated that mother and father were in a dating relationship. The social worker testified this was cause for concern because the facts in the order contradicted mother's statements to the agency about distancing herself from father.

The agency took the position that custody should not be given back to mother because of her relationship with father, who appeared to be continuing to use drugs. Counsel for father and mother argued the agency had not met its burden of showing by clear and convincing evidence that S.S. should be removed, and sought

3

placement with mother.  The court concluded the recency of the father's contacts with mother supported a finding that vesting custody of S.S. with mother would be detrimental to S.S.  The court approved the agency's case plan (which called for reunification services to be provided to mother), and set review hearings for September and December.  Mother timely appealed.

## DISCUSSION

Mother argues the juvenile court erred by removing S.S. from her custody. We review the juvenile court's dispositional findings for substantial evidence.  (*In re Ma.V.* (2021) 64 Cal.App.5th 11, 22.)  The relevant standard is provided by Welfare and Institutions Code section 361, subdivision (c)(1):  "A dependent child shall not be taken from the physical custody of his or her parents . . . unless the juvenile court finds clear and convincing evidence of any of the following circumstances . . . [¶] (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."

As a preliminary matter, we are mindful of our published observation of "a recent, and troubling trend, of what we perceive as mothers being punished as victims of domestic violence," in the Orange County juvenile courts.  (*In re Ma.V., supra,* 64 Cal.App.5th at p. 25.)  In fact, at the dispositional hearing, which took place shortly after our publication of *In re Ma.V.*, counsel in this case made that very argument to the juvenile court.

However, the facts of this case do not fit into that paradigm.  Here, at least as far as the May 25, 2021 incident is concerned, mother appears to have been the aggressor and not the victim.  More importantly, the incident demonstrates mother had not, in fact, distanced herself from father as late as one month before the dispositional hearing.  It also lends credibility to the caregiver's allegations that father remained

4

involved in mother's life, even after the incident. These facts contrast sharply with those of *In re Ma.V.*, in which it was undisputed the mother had ended her relationship with the abuser and had no contact with him for 10 months prior to the dispositional hearing. (*In re Ma.V.*, *supra*, 64 Cal.App.5th at p. 22.) The caregiver's allegations, along with the domestic violence incident, constitute substantial evidence to support the juvenile court's finding by clear and convincing evidence of a continuing danger to the child created by mother's relationship with father.

Mother contends the juvenile court could have assuaged its concerns regarding father's presence by issuing an order protecting mother and S.S. from father. Such an order, mother argues, would have been a "reasonable means by which [S.S.'s] physical health [could] be protected without removing [S.S.] from [mother's] . . . physical custody," as described in Welfare and Institution Code section 361, subdivision (c)(1). However, substantial evidence supports the court's contrary conclusion. The danger to S.S.'s well-being arose from a continued *consensual* relationship between father and mother, in the course of which mother would allow father unauthorized visitation with S.S., despite father's ongoing drug issues. A restraining order would also do nothing to protect S.S. from father if mother allowed father to visit and a fight broke out.

Mother also argues the juvenile court erred by failing to take into account mother's progress when approving the agency's case plan. Mother points to her participation in therapy, Narcotics Anonymous, and drug testing, her completion of a parenting class, and the social worker's testimony that he was no longer concerned with her sobriety or mental health. Mother complains that the agency's case plan required her to take many of these steps, and the court's order approving the case plan does not reflect her completion of those steps, potentially requiring her to complete them again. The agency argues the issue was forfeited by mother's failure to object to specific components of the case plan in the court, but also concedes that the inclusion of certain items in the case plan "would not necessarily require Mother to redo elements she had

5

completed if she remain[s] sober and mentally stable, e.g., another substance abuse treatment program."

We construe the juvenile court's approval of the case plan consistently with the agency's concession. We note the case plan itself, which was prepared in August 2020, sets projected completion dates for various requirements at dates long before the time the court approved the plan.[1] We do not interpret it as requiring mother to restart drug testing, newly reengage with Narcotics Anonymous, complete a second parenting class, or complete another drug treatment program. Nor, for that matter, do we interpret the court's approval of the case plan as returning mother to the low level of supervised visitation authorized by the case plan, given the court's specific orders issued in the interim allowing more liberal visitation. Instead, we conclude the court's order approving the case plan simply formalized the existing status quo.

## DISPOSITION

The juvenile court's order is affirmed.

ZELON, J.*

WE CONCUR:

BEDSWORTH, ACTING P. J.

GOETHALS, J.

*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

---

[1] For example, the case plan suggests mother should complete her parenting class by January 25, 2021, even though the case plan was not approved by the court until June.